IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BRANDON MONTGOMERY                                                      PLAINTIFF

V.                           CASE NO. 4:18-CV-185-BD

SOCIAL SECURITY ADMINISTRATION                                         DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiff Brandon Montgomery has appealed the final decision of the Commissioner of the Social Security Administration denying his claims for disability insurance benefits and supplemental security income. Both parties have submitted appeal briefs, and the case is ready for decision.[1]

I.   **Background:**

Mr. Montgomery claims that he became limited in his ability to work due to arthropathies, mood disorders, bipolar disorder, depression, anxiety, post-traumatic stress disorder, shoulder surgery, and hip issues. (SSA record at 43-44, 62, 78) After conducting a hearing, the Administrative Law Judge ("ALJ")[2] concluded that Mr. Montgomery had not been under a disability within the meaning of the Social Security Act ("the Act") at any time from February 24, 2015 through the date of his decision, March 29, 2017. (*Id*. at 24) The Appeals Council denied Mr. Montgomery's request for review of the ALJ's

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket entry #4)

[2] The Honorable Harold D. Davis.

decision, making the ALJ's decision the Commissioner's final decision. (*Id*. at 1-5) Mr. Montgomery then filed a complaint initiating this appeal. (#2)

Mr. Montgomery was 29 at the time of the hearing, had a tenth-grade education and had passed his GED examination. (*Id*. at 37) He lived with a friend. (*Id*. 37-38) He had past relevant work as a fast food worker, fry cook, poultry packer, industrial cleaner, poultry deboner, and cashier II. (*Id*. at 23, 52-56)

## II.     The ALJ's Decision:

The ALJ determined that Mr. Montgomery had not engaged in substantial gainful activity since February 24, 2015, and that his internal derangement of the right shoulder status-post two operations, hepatitis C, and major depression with psychotic features were severe impairments; but, he did not have an impairment or combination of impairments that met a listed impairment. (*Id*. at 17-19) He further found that Mr. Montgomery's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id*. at 19-20)

Based on these findings, the ALJ concluded that, during the relevant period, Mr. Montgomery retained the residual functional capacity ("RFC") for light work, except that he was limited to occasional overhead reaching and would need a job involving simple tasks and simple instructions. (*Id*. at 19)

The ALJ found that Mr. Montgomery could not perform his past relevant work. (*Id*. at 23) Relying on the testimony of a Vocational Expert ("VE"), the ALJ held, based on Mr. Montgomery's age, education, work experience and RFC, that he could perform

work in the national economy as a price marker and plastics molding machine tender. (*Id.*

at 24) The ALJ determined, therefore, that Mr. Montgomery was not disabled. (*Id.* at 24)

### III. <u>Discussion</u>:

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record and free of legal error. *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018); see also 42 U.S.C. § 405(g). Substantial evidence in this context means enough relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Id.* (citing *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (other citation omitted).

To determine whether the Commissioner's decision is supported by substantial evidence, the Court must consider evidence in the record that supports the decision, and also, evidence that detracts from the decision. *Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 557 (8th Cir. 2018) (citation omitted). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) (citations omitted).

#### A. **Issues on Appeal**

Mr. Montgomery claims that the ALJ's mental RFC assessment is contrary to substantial evidence, because he failed to properly evaluate and incorporate the opinion evidence. More specifically, he claims that the ALJ erred by only limiting him to work involving "simple tasks and simple instructions" without including a limitation for work that requires only minimal social interactions. (#11 at 4) The Commissioner responds that

3

the ALJ's RFC determination is supported by substantial evidence and any error was harmless. (#12 at 4-5)

   B.   RFC

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. Social Security Ruling 96-8p. The ALJ must determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of claimant's ability to function in the workplace." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (internal citations omitted).

On June 9, 2016, Steve Brown, M.D., a state agency medical consultant, reviewed Mr. Montgomery's medical records and found that he was moderately limited in his ability to interact with the general public. Dr. Brown opined that Mr. Montgomery was not significantly limited in other social categories, however, such as the ability to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers without distracting them or exhibiting behavioral extremes; and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (*Id*. 72) He concluded that Mr. Montgomery could perform, "simple, routine, repetitive tasks in a setting where

interpersonal contact is incidental to work performed; supervision required is simple, direct and concrete." (*Id*. at 73)

On September 6, 2016, Jon Etienne Mourot, Ph.D., another state agency medical consultant, agreed that Mr. Montgomery was moderately limited in his ability to interact appropriately with the general public, but not significantly limited in any other area of social interaction. (*Id*. at 107-08) Dr. Mourot concluded that Mr. Montgomery could perform unskilled work. (*Id*. at 108)

When assessing Mr. Montgomery's RFC, the ALJ gave the opinions of the state agency medical consultants "great weight." (*Id*. at 22) Mr. Montgomery says this was error because the ALJ should have limited him to unskilled work, not just to work involving simple tasks and simple instructions. (*Id*. at 19)

The ALJ noted that he considered not only the findings of Dr. Brown and Dr. Mourot, but also, the entire record, which indicates that Mr. Montgomery has no limitations interacting with others. As the ALJ noted, Mr. Montgomery reported living with friends and having a partner and children. Additionally, Mr. Montgomery continued to be independent in his activities of daily living and did not require further mental health treatment. (*Id*. at 19-23, 274-76)

The ALJ's RFC determination is supported by substantial evidence. In August 2015, Mr. Montgomery was admitted to Springwoods Behavioral Health with severe anxiety. (*Id*. at 443) Upon discharge, his mood and affect were stable, his anxiety had improved, and he had no signs or symptoms of psychosis. Although he stated he planned to enter rehab, he chose not to discharge to inpatient substance abuse treatment and

5

instead requested discharge to a shelter where his girlfriend was planning to meet him. (*Id*. at 442)

During a diagnostic evaluation at Western Arkansas Counseling and Guidance Center in September 2015, Mr. Montgomery reported that he was divorced with four children. He stated he had two close friends and did not get along very well with others. (*Id*. at 456) The counselor noted that among Mr. Montgomery's functional strengths and abilities was his ability to work cooperatively with others. (*Id*. at 458) At that time, Mr. Montgomery had a female partner and was living with six other adults. (*Id*. at 458)

The record does not indicate that Mr. Montgomery received any additional mental health treatment, and at the hearing, he testified that he was not receiving any. Treatment notes of other medical providers indicate that Mr. Montgomery was cooperative; pleasant; had normal mood and affect; normal behavior; displayed good memory and judgment; showed normal attention and concentration; and had logical, coherent, and goal-directed mental activity with normal thought content. (*Id*. at 313-14, 356, 376, 387-88, 433, 435, 473, 639, 656)

Further, even if the ALJ erred by not restricting Mr. Montgomery to work where interpersonal contact is incidental to the work performed, the error was harmless. Neither of the jobs identified by the vocational expert that Mr. Montgomery could perform require "significant" dealings with the public. DOT 209.587-034 and DOT 556.685-022; *see also Byes v. Astrue,* 687 F.3d 913, 917 (8th Cir. 2012) (harmless error if the court can say that ALJ inevitably would have reached the same result had ALJ not erred).

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny Mr. Montgomery's applications for disability insurance benefits and supplemental security income. The ALJ made no legal error. For these reasons, Mr. Montgomery's request for relief (#2) is DENIED, and the decision denying the applications for benefits is AFFIRMED.

IT IS SO ORDERED, this 28th day of January, 2019.

_____
UNITED STATES MAGISTRATE JUDGE